## SECURITIES AND EXCHANGE COMMISSION, Plaintiff,

Securities Investor Protection Corporation, Applicant,

v.

## PROVIDENT SECURITIES, INC., Defendant.

Harvey R. MILLER, as Trustee for the liquidation of Provident Securities, Inc., and Securities Investor Protection Corporation, Appellants,

v.

## Eve KOMONS and Michael Komons, Appellees.

No. 73 Civ. 340.

United States District Court, S. D. New York.

June 12, 1978.

Weil, Gotshal & Manages, New York City, for Trustee Harvey R. Miller, by William J. Rochelle III, Judith Garson, Philip H. Kalban, New York City, of counsel.

Ballon, Stoll & Itzler, New York City, for Komons Claim, by Morton S. Robson, New York City, of counsel.

Theodore H. Focht, General Counsel, Washington, D. C., for Securities Investor Protection Corp.; Wilfred R. Caron, William H. Seckinger and Kevin H. Bell, of counsel.

## OPINION

WHITMAN KNAPP, District Judge.

This is an appeal from an order of Bankruptcy Judge Ryan denying a motion by the Trustee for the liquidation of Provident Securities, Inc., a brokerage firm, for summary judgment expunging the claims of Michael and Eve Komons. Their claims, if granted, would entitle them to recover out of a special fund established pursuant to the Securities Investors' Protection Act of 1970, ("S.I.P.A."), which fund is made up of assessments levied on other brokerage firms. We have reviewed Judge Ryan's findings of fact, and approve and adopt them.[1] We disagree, however, with the Judge's conclusions of law, and grant the Trustee's motion.

The Trustee contends that *S. E. C. v. Packer, Wilbur & Co., Inc.* (2d Cir. 1974) 498 F.2d 978 is here controlling. Judge Ryan, conceded that "broad language used by the District Court and approved by the Circuit Court in *Packer, Wilbur* might appear to cover the facts of the instant case." However, he found such language not to be controlling and the decision distinguishable. We disagree. We find that the Court of Appeals did not intend to narrowly limit its decision to the facts before it. Rather, it

---

1. Judge Ryan's findings are set forth as an appendix to this opinion.

intended to announce a basic public policy that persons who found themselves in the position of claimants as a result of having violated regulations promulgated pursuant to the Securities and Exchange Act were not intended to be beneficiaries of the public funds established pursuant to S.I.P.A.[2] The Komonses[3] clearly come within this category of securities law violators and are therefore not entitled to claim under S.I.P.A.

The order of the Bankruptcy Judge is therefore reversed, and he is directed to grant the Trustee's motion for summary judgment.

SO ORDERED.

## APPENDIX

(Excerpt from the Opinion of Hon. Edward J. Ryan, Bankruptcy Judge)

The Trustee received claims from the Komonses (Claims # 808 and 809) in April, 1973, for approximately $7,000 in securities and more than $34,000 in cash from the SIPA fund. The claims to SIPA funds represent money that the Komonses had deposited with Provident for the alleged purpose of purchasing securities. The Trustee argues that the Komonses are not entitled to recover those claims from the SIPA fund because they had obtained the money they deposited with Provident by means of a bank loan of a type prohibited by the Securities and Exchange Act of 1934 (15 U.S.C. § 78g) (Exchange Act) and by margin regulations promulgated under that Act.

The founder and president of Provident was Pericles Constantinou. Komons had traded with Constantinou not only after Constantinou founded Provident in 1969, but also for several years before then, when Constantinou was associated with other brokerage firms. Komons was an active investor who made, on the average, two or three transactions a week, mostly in high-risk, over-the-counter stocks. He usually maintained two or three accounts at a time, but dealt primarily with Constantinou.

On January 8, 1973, only two weeks before Provident went out of business, Komons took out a loan for $40,000 from Chase Manhattan Bank (Chase). Constantinou had made all the arrangements for the loan to Komons and for four similar loans, also for $40,000 each, that Chase extended to four other persons at the same time. Constantinou allegedly explained to Komons that Komons was to deposit the proceeds of the loan in his Provident account and that Constantinou would use the funds to purchase shares of Repadco, Inc., stock. For purposes of this motion for summary judgment, we assume, without deciding, that the purpose of the Chase loan was the purchase of securities.

On the purpose statement (Federal Reserve Form U–1) that Komons signed when he took out the loan, however, the purpose of the loan is not stated to be the purchase of securities. Rather the purpose is stated to be "to purchase real estate in Queens." That response is crossed out, and beneath it is written "personal loan to P. Constantinou."

Constantinou had arranged to have the loan collaterized by shares of Repadco stock owned by a third party who was a friend of Constantinou. In fact, not Repadco stock but Fantastic Fudge, Inc., stock was deposited with Chase as collateral. Regulation T (12 C.F.R. § 220.3(b) and § 220.7), one of the margin regulations promulgated by the

---

2. This policy, of course, does not disentitle the Komonses from claiming against the assets of the Bankrupt estate. It has only to do with entitlement to the special insurance fund established pursuant to S.I.P.A.

3. It is undisputed that Michael Komons deposited the proceeds of the $40,000 bank loan which he had obtained by violating the securities laws into an account for his wife in addition to an account for himself because he knew that S.I.P.A. provided only up to $20,000 in coverage for any one account. (See M. Komons' deposition p. 109) Counsel for Eve Komons argues that she is entitled to recover the funds deposited in her name because she did not participate in the securities violations. We believe this to be irrelevant. Either she is a nominee and the funds are really those of her husband, or she is a donee, not a bona fide purchaser, in which case she should stand in the same shoes as the donor.

Federal Reserve Board pursuant to authority vested in it by the Exchange Act, has the effect of barring a broker from either extending credit to or arranging for the extension of credit to a customer where the credit is collaterized by securities not registered on a national securities exchange or included in the Federal Reserve's list of over-the-counter margin stocks. See *Alaska Inter-state Co. v. McMillian,* 402 F.Supp. 532, 553–54 (D.Del.1975). At the time the Chase loan was transacted neither Repadco nor Fantastic Fudge stock was traded on a national exchange or included in the Federal Reserve Board's list of approved stocks.

With the proceeds of the loan Komons deposited $24,000 on his account at Provident and opened an account for his wife in the amount of $15,000. The transaction resulted in a credit balance of less than $20,000 in Komons' account because there was a preexisting debit balance.

These funds remained in the Komonses' accounts until Provident went out of business on January 23, 1973. No purchase of securities was ever made with the loan proceeds.

The Trustee contends that Komons violated the Exchange Act in two ways: first by deliberately signing a false purpose statement when he took out the Chase loan, and second by participating in and receiving a loan of a type prohibited by the margin regulations promulgated pursuant to that act.

In misstating the purpose of the loan he obtained from Chase, Komons clearly acted willfully. One who deliberately enters false information on a purpose statement may be found guilty of a federal crime pursuant to 18 U.S.C. § 1001. See *U. S. v. Van de Carr,* 343 F.Supp. 993 (D.C.Cal.1972).

Such behavior also appears to constitute a violation of the margin regulations. Regulation U (12 C.F.R. § 221.3(a)) requires a bank to obtain a purpose statement from all customers to whom it extends credit that is secured by stock. Regulation X requires that a borrower who obtains credit for the purpose of purchasing securities comply with the provisions of Regulation U (except

12 C.F.R. § 221.2(i), not applicable here). Thus, a duty to provide the lending bank with a purpose statement is imposed on the borrower who, like Komons, takes out a loan that is secured by stock and is for the purpose of purchasing securities. The importance of a borrower's truthfully identifying the purpose of such a loan is emphasized by Section 1 of Regulation X, which states,

> . . . The purpose of this part (Regulation X) is to prevent the infusion of unregulated credit obtained both outside and within the United States into U.S. securities markets in circumvention of the Board's margin regulations or by borrowers falsely certifying the purpose of a loan or otherwise wilfully and intentionally evading the provisions of those regulations. . . . (12 C.F.R. § 224.1)

See *Serzysko v. Chase Manhattan Bank,* 290 F.Supp. 74 (S.D.N.Y.1968), *affd. on opinion below,* 409 F.2d 1360 (2d Cir.), *cert. denied* 396 U.S. 904, 90 S.Ct. 218, 24 L.Ed.2d 180 (1969).

The Komonses argue that they did not violate these provisions because, although the intended purpose of the loan was the purchase of securities, the loan proceeds were in fact never used for that purpose. Nonetheless, the "purpose" of the loan was the purchase of securities. Chase agreed to make the loan in reliance on Komons' statement that the purpose was otherwise. Had Chase been informed that Komons intended to use the loan proceeds to purchase securities, it would have made the loan only on the condition that other collateral be deposited.

As noted above, Regulation T bars a broker from arranging for the extension to his customer of a loan collaterized by securities not registered on a national securities exchange or included in the Federal Reserve Board's list of over-the-counter margin stocks. The customer as well as the broker has a duty to comply with the provisions of Regulation T. 12 C.F.R. § 224.2(a)(2). *Freeman v. Marine Midland Bank-New York,* 494 F.2d 1334 (2d Cir. 1974), *Bell v. J. D. Winer & Co.,* 392 F.Supp. 646 (S.D.N.Y.

1975). See Note, "Regulation X and the Investor-Lender Margin Violation Disputes," 57 Minn.L.Rev. 208 (1972).

The trustee also contends that Komons violated the margin regulations by aiding and abetting Constantinou's arrangement of the Chase loan. Section 6(b) of Regulation X provides that

> Any person who willfully aids or abets the violation by any other person of any provision of this part (Regulation X) shall be deemed in violation of this part (Regulation X). For the purpose of this subsection, the term "aids or abets" shall include, but not be limited to, counsels, commands, induces, or procures. 12 C.F.R. § 224.6(b).

Since Regulation X specifically incorporates Regulation T (12 C.F.R. § 224.2(a)(2)), the type of violation committed by another that one can be found to have aided and abetted would appear to include conduct like Constantinou's arrangement of the Chase loan.